## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARCIA HAUENSTEIN by and through Kathy Switzer, Next friend and Attorney-in-fact, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-10-940-M |
| STATE OF OKLAHOMA ex rel. OKLAHOMA DEPARTMENT OF HUMAN SERVICES, and HOWARD H. HENDRICK, Director of Human Services; STATE OF OKLAHOMA, ex rel. OKLAHOMA HEALTH CARE AUTHORITY, and MIKE FOGARTY, Director of Oklahoma Health Care Authority, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

This case is scheduled for trial on the Court's June 2011 trial docket.

Before the Court is defendants' Motion for Summary Judgment, filed March 21, 2011. On April 11, 2011, plaintiff filed her response. Pursuant to this Court's order, defendants filed their Brief Regarding the Eck Trust as an Available Resource on May 2, 2011, and on May 9, 2011, plaintiff filed her reply to defendants' brief. On May 16, 2011, the Court conducted a hearing on defendants' Motion for Summary Judgment, at which counsel presented argument as to whether the trusts at issue in this case were available resources. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

Henry Eck and his wife Lourene Eck had four daughters: Gloria Jean Fast ("Fast"), Kathy Switzer ("Switzer"), Elizabeth Simpson ("Simpson"), and plaintiff Marcia Hauenstein ("Hauenstein").  On March 29, 1991, Henry Eck established the Revocable Living Trust of Henry R. Eck ("Henry Eck Trust") and served as its initial trustee until his death on October 15, 2004. Pursuant to the terms of the Henry Eck Trust, on the death of Mr. Eck, certain personal property was to be distributed to his wife and the corpus and undistributed income of the trust were to be distributed to his four daughters.  On May 9, 2001, prior to his death, Henry Eck amended the Henry Eck Trust so that Hauenstein's fourth interest would be held in trust for her following her father's death.[1]  Upon Mr. Eck's death, Switzer and Fast became the successor trustees of the Henry Eck Trust.

On September 8, 2006, the Operating Agreement of the Eck Family LLC ("Eck LLC") was executed.  Switzer and Fast were named managers of the Eck LLC.  Switzer, Fast, and Simpson contributed their assets to the Eck LLC, and $151,215.36 of assets, composed of land, minerals, and cash, which constituted the fourth interest held in trust for Hauenstein, was contributed to the Eck LLC.  The $151,215.36 capital contribution to the Eck LLC was made by Switzer and Fast, acting in their capacities as trustees of Hauenstein's fourth interest.  The capital contributions to the Eck LLC were made in return for a restricted interest in the LLC; no capital contributor to the Eck LLC could withdraw their contribution and none of the contributors could sell their interest without receiving unanimous consent of the other contributors.

---

[1]Also on May 9, 2001, Henry Eck amended the Henry Eck Trust so that Simpson's fourth interest, which was originally to be held in trust for her and her daughter, was to be held in trust for her only.

On September 11, 2006, Switzer and Fast each paid $36,849.19 to Simpson for an undivided interest in the 30.96% of the Eck LLC that Simpson had paid $122,830.64 for on September 8, 2006. Also on September 11, 2006, Switzer and Fast, as trustees of Hauenstein's fourth interest, sold the trust's 38.11% interest in the Eck LLC for $90,729.22. The purchasers of the trust's 38.11% interest in the Eck LLC were Switzer and Fast. Each paid $45,364.61 to the trust for an undivided half interest in the 38.11% of the Eck LLC owned by the trust. Switzer's and Fast's checks for $45,364.61 were deposited on October 13, 2006 into an account owned by the trust.

On September 7, 2006, Switzer and Fast established the Hauenstein Family Revocable Trust ("Hauenstein Trust"), naming themselves as trustees. On September 11, 2006, Switzer and Fast, as trustees of Hauenstein's fourth interest, wrote a check for $90,729, payable to the Hauenstein Trust. The check was deposited on October 13, 2006 into an account owned by the Hauenstein Trust.

On December 8, 2008, a guardianship was set up for Hauenstein, and later that month, she moved to a nursing home. On March 13, 2009, an application for the Oklahoma Medicaid Program to pay for Hauenstein's nursing home care was filed. Defendant the Oklahoma Department of Human Services ("OKDHS") denied the application on April 17, 2009, because "You did not receive equal value for resources you have transferred to someone else." The denial was affirmed by the OKDHS Appeals Committee, and, on June 2, 2010, defendant Howard H. Hendrick ("Director Hendrick"), acting in his capacity as Director of Human Services, was asked to review the decision pursuant to Okla. Stat. tit. 56, § 168(C).

On July 26, 2010, Director Hendrick issued a decision in which he found that the $151,215 contribution of money and property which constituted the fourth interest held in trust for Hauenstein

3

had been sold for $60,486.[2] Director Hendrick further found the difference, $90,729, constituted a transfer of resources without receipt of fair market value in return and disqualified Hauenstein from receiving Medicaid benefits until July 25, 2008. The decision also stated that Hauenstein would be eligible for Medicaid on the first day after July 25, 2008, that her Medicaid-countable resources, including the corpus of the Hauenstein Trust, totaled $2,000 or less.

On August 30, 2010, Hauenstein filed the instant action challenging OKDHS' decision to deny her Medicaid benefits. Defendants now move for summary judgment in their favor.

## II.   Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[2]Defendants admit that the finding in Director Hendrick's July 26, 2010 decision that the trust sold its 38.11% interest in the Eck LLC for $60,486 was an error. The trust sold its 38.11% interest in the Eck LLC for $90,729.

4

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

Defendants assert that they are entitled to judgment as a matter of law on all of plaintiff's claims in this case because: (1) plaintiff's claims are each based on a factual allegation that is demonstrably incorrect; (2) plaintiff fails to state any claims under 42 U.S.C. § 1983 on which she can be successful; (3) OKDHS followed federal law in denying Hauenstein's application for Medicaid benefits; and (4) plaintiff fails to plead with sufficient specificity facts setting forth a Supremacy Clause argument.[3]

A.   Incorrect factual allegation

Defendants assert that plaintiff's claims for relief each rest on a version of events that did not take place, specifically that funding of the Hauenstein Trust was the penalized transaction. Because the penalized transaction was the sale of the interest in the Eck LLC held in trust for Hauenstein to Switzer and Fast, defendants contend that plaintiff is not entitled to relief of any sort and judgment must be entered in favor of defendants. Having carefully reviewed plaintiff's Complaint, as well as the parties' submissions, the Court finds no incorrect factual allegations warranting summary judgment. Specifically, the Court finds that in this action, plaintiff is challenging defendants' determination that Hauenstein's fourth interest from the Henry Eck Trust, which was to be held in trust for her, was an available resource to Hauenstein, that the sale of the trust's interest in the Eck LLC to Switzer and Fast was not for fair market value, and that the

---

[3] Because this Court finds that plaintiff is entitled to judgment on her claims under 42 U.S.C. § 1983, the Court finds no need to address plaintiff's Supremacy Clause claim.

Hauenstein Trust was an available resource to Hauenstein. Accordingly, the Court finds defendants are not entitled to summary judgment on this basis.

B.    § 1983 claims

Defendants contend that plaintiff's § 1983 claims fail to state a claim that survives the qualified immunity granted public officials or the state's Eleventh Amendment immunity. The Court notes at the outset that certain defendants have been improperly named. Plaintiff utilized an "ex rel." designation in the caption of the case with regard to defendants. "Under Tenth Circuit and Oklahoma law, the 'ex rel.' designation has no significance when used in relation to a defendant, and parties on both sides of the 'ex rel.' designation are treated as named defendants." *Bishop v. United States*, No. 04-CV-848-TCK-TLW, 2009 WL 4505951, at *3 (N.D. Okla. Nov. 24, 2009) (citing *Osage Nation v. Okla. ex rel. Okla. Tax Comm'n*, 260 Fed. Appx. 13, 16 n.3 (10th Cir. 2007) (unpublished) ("A suit ex rel. is typically brought by the government upon the application of a private party (called a relator) who is interested in the matter. Where, as here, the designation is used as to a defendant, we afford it no significance.")). Thus, the Court will treat both the State, the Oklahoma Department of Human Services, Howard H. Hendrick, the Oklahoma Health Care Authority, and Mike Fogarty as defendants.

In her response, plaintiff states that she sued the officials, the directors of OKDHS and the Oklahoma Health Care Authority, rather than the state itself. Further, the Court finds that defendants the State of Oklahoma, the Oklahoma Department of Human Services, and the Oklahoma Health Care Authority are all entitled to dismissal from this action by virtue of the Eleventh Amendment. Accordingly, defendants the State of Oklahoma, the Oklahoma Department of Human Services, and the Oklahoma Health Care Authority are hereby dismissed.

In her response, plaintiff also asserts that pursuant to the *Ex Parte Young* doctrine, she may seek prospective injunctive relief from the individual defendants, whom she has sued in their official capacities. The Supreme Court has made clear that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)).

> In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [against state officers sued in their official capacities], a court need only conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (internal brackets omitted) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (plurality) (O'Connor, J., concurring in part)).

The Tenth Circuit has outlined a four-part test to apply *Ex parte Young*: (1) the plaintiff is suing state officials, rather than the state itself; (2) the plaintiff has alleged a non-frivolous violation of federal law; (3) the plaintiff seeks prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate "special sovereignty interests." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 609 (10th Cir. 1998). In the instant case, plaintiff has brought suit against defendants Hendrick and Fogarty, officials of the OKDHS and the Oklahoma Health Care Authority. Further, the Court finds that plaintiff has alleged a non-frivolous violation of federal law, specifically 42 U.S.C. § 1382b and 42 U.S.C. § 1396p(c). Additionally, in this case, plaintiff seeks prospective equitable relief – injunctive relief requiring defendants to comply with federal law and certify that plaintiff is eligible for Medicaid.

Finally, the Tenth Circuit has specifically observed that "[a] state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of *Ex parte Young*." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999). Accordingly, the Court finds that plaintiff is entitled to rely on the *Ex parte Young* doctrine and may seek prospective injunctive relief from the individual defendants, whom she has sued in their official capacities.

Defendants further contend that plaintiff's Complaint lists no specific actions by defendant Fogarty, but that he has been sued simply for holding his position as agency head. Plaintiff, however, is not required to plead personal participation in the traditional sense, as required, for example, in cases involving conditions of confinement and claims arising under a theory of respondeat superior. In this case, plaintiff has sued defendants Hendrick and Fogarty in their official capacity for the alleged failure to properly administer Medicaid as required by federal law. The individual defendants are charged with assuring that their respective agencies' decisions comply with federal law, and, thus, the Court finds that they are properly named as defendants. *See D.T.M. ex rel. McCartney v. Cansler*, 382 Fed. Appx. 334, 338 (4th Cir. 2010) (citing *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985) ("[W]here injunctive, as opposed to monetary relief is sought, no 'direct and personal' involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court.")); *see also*, *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001) ("defendants are two state officials exercising considerable control over the implementation and administration of waiver services under New Mexico's Medicaid plan."). As such, the Court finds

defendant Fogarty is not entitled to dismissal on the basis that plaintiff has failed to allege any specific actions by him.

Finally, defendants contend that defendants Hendrick and Fogarty are protected by qualified immunity from plaintiff's § 1983 claims against them in their individual capacities.

> [O]nce a defendant raises a qualified immunity defense the plaintiff assumes the burden of showing that the defendant has violated clearly established law. To overcome the defense, the plaintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . there is no requirement that the specific action in question have previously been held unlawful, the plaintiff must show that the unlawfulness of the conduct in question is "apparent" in light of preexisting law.

*Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds by *Dixon v. Richer*, 922 F.2d 1456, 1461 (10th Cir. 1991) (internal quotations and citations omitted).

In her response, plaintiff never specifically addresses defendants' qualified immunity defense arguments. The Court finds that plaintiff has not satisfied her burden of showing that defendants Hendrick and Fogarty, in their individual capacity, have violated clearly established law. While plaintiff has set forth specific federal statutes that defendants Hendrick and Fogarty have allegedly violated, the Court finds that plaintiff has not shown that these statutes (the law in question) are sufficiently clear that a reasonable official would understand that what he is doing violates that law. In fact, the Court finds that the federal statutes and regulations which address Medicaid eligibility is quite complex and fact driven that the alleged unlawfulness of the conduct at issue in this case would not have been "apparent" in light of these federal statutes and regulations. Accordingly, the

9

Court finds that summary judgment should be granted in favor of defendants Hendrick and Fogarty, in their individual capacities, as to plaintiff's § 1983 claims.

### C. Denial of Medicaid application

One of the many kinds of services available through the Oklahoma Medicaid Program is Long-Term Care ("LTC"), which covers people who live in an institution, such as a nursing home. 42 U.S.C. § 1392a(10)(ii)(V). One of the requirements for LTC eligibility is that the institutionalized individual have countable resources of $2,000 or less. 42 U.S.C. §§ 1396a(a)(a)(17)(B), 1382(a)(1)(B); OAC 317:35-19-20(2).

"Resource" is the term used by Medicaid for what the rest of the world calls an asset. 42 U.S.C. § 1396p(h)(5) defines "resource" as "the meaning given such term in section 1382b of this title, without regard (in the case of an institutionalized individual) to the exclusion described in subsection (a)(1) of such section." However, 42 U.S.C. § 1382b does not define what a resource is. 20 C.F.R. § 416.1201(a) contains the relevant definition:

> (a) Resources; defined. For purposes of this subpart L, resources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.
>
> (1) If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse). . . .

20 C.F.R. § 416.1201(a)(1). For Medicaid purposes, "asset" is defined as income and resources. 42 U.S.C. § 1396p(h)(1).

In determining whether the denial of Hauenstein's Medicaid application was in accordance with federal law, the Court must first decide whether Hauenstein's fourth interest from the Henry

10

Eck Trust which was to be held in trust for her is a countable resource. Hauenstein asserts that it is not; defendants assert that it is.

The parties agree that whether the fourth interest is a countable resource depends on when the trust was established. Hauenstein asserts that a new trust for her benefit, consisting of her fourth interest in the Henry Eck Trust, was established when her father Henry Eck died on October 15, 2004.[4] In the alternative, Hauenstein assets that a new trust for her benefit was established on May 9, 2001 when her father amended the Henry Eck Trust so that Hauenstein's fourth interest would be held in trust for her following her father's death.[5] Defendants, on the other hand, assert that the trust was established on March 29, 1991 when Henry Eck established the Henry Eck Trust. Defendants contend that no new trusts were created when Henry Eck died but that Hauenstein's fourth interest simply remained in trust in the Henry Eck Trust.

The parties also agree that if the trust consisting of Hauenstein's fourth interest was established in either 2001 or 2004, the corpus of the trust – Hauenstein's fourth interest – is not a countable resource and Hauenstein is entitled to judgment in her favor.[6] The Court, therefore, must determine when the trust was established. To make this determination, the Court looks to the specific language of the amendments made to the Henry Eck Trust.

On May 9, 2001, Henry Eck executed the First Amendment to the Revocable Living Trust of Henry R. Eck, Dated March 29, 1991. Through that amendment, Henry Eck amended his

---

[4]The parties do not dispute the date on which Henry Eck died.

[5]The parties do not dispute the date on which the amendment was made.

[6]At the hearing, defendants' counsel conceded that if the trust was established in either 2001 or 2004, Hauenstein's fourth interest would not be a countable resource and Hauenstein would be entitled to judgment in her favor.

revocable living trust such that Hauenstein would no longer receive her fourth interest outright but would receive her fourth interest "to be held, administered and distributed in trust by the Successor Trustees". First Amendment to the Revocable Living Trust of Henry R. Eck, Dated March 29, 1991, attached as Exhibit 5 to defendants' Motion for Summary Judgment. Further, the fourth interest was to be held, administered, and distributed in trust under the following terms and conditions:

> (i) the net income of the trust shall be distributed to SETTLOR'S daughter, Marcia Yvonne Hauenstein, during her life time.
>
> (ii) If any part of the principal is necessary for the health, education, support, or maintenance of SETTLOR'S daughter, Marcia Yvonne Hauenstein, the Successor Trustees are authorized and directed to invade the principal for the benefit of such daughter. All of the Trustees powers as set forth under Article IV of the Revocable Living Trust, dated March 29, 1991, together with all of the other provisions of said trust <u>shall also be applicable to **this** trust after SETTLOR'S death</u>.
>
> (iii) If SETTLOR'S daughter, Marcia Yvonne Hauenstein has no issue per stirpes at the time of her death, then this share of my trust shall be distributed to the grandchildren of SETTLOR equally: Roger D. Fast, Randall S. Fast, Cassandra L. Schlotthauer, and Kari Lynn Simpson, to be distributed at the time of distribution of trust property.

*Id.* (emphasis added).

Based upon the emphasized language set forth above, the Court finds that the First Amendment to the Revocable Living Trust of Henry R. Eck, Dated March 29, 1991 created a new, separate trust upon the death of Henry Eck. Specifically, the Court finds the fact that the amendment referenced the trust consisting of Hauenstein's fourth interest of the Henry Eck Trust as "this trust," differentiating it from the Henry Eck Trust, shows that the Henry Eck Trust and the trust in which Hauenstein's fourth interest was held are not the same trust, but in fact are separate trusts. The Court further finds that its determination is supported by the language contained in the Second

Amendment to the Revocable Living Trust of Henry R. Eck, Dated March 29, 1991, which was also executed on May 9, 2001. This amendment, which addressed Simpson's fourth interest in the Henry Eck Trust, which was also to be held, administered, and distributed in trust, uses the same language as the first amendment – "All of the Trustees powers as set forth under Article IV of the Revocable Living Trust, dated March 29, 1991, together with all of the other provisions of said trust <u>shall also be applicable to **this** trust after SETTLOR'S death</u>." Second Amendment to the Revocable Living Trust of Henry R. Eck, Dated March 29, 1991, attached as Exhibit 6 to defendants' Motion for Summary Judgment (emphasis added). The Court finds the use of the same language in both amendments clearly shows the use of the word "this" was intentional and that it was the intention of Henry Eck to create two new trusts, one for Hauenstein's fourth interest and one for Simpson's fourth interest, upon his death.

Accordingly, the Court finds that the trust at issue in this case – the trust consisting of Hauenstein's fourth interest – was established on October 15, 2004. Because this trust was established in 2004, the Court finds the corpus of the trust – Hauenstein's fourth interest – is not a countable resource. Additionally, because the corpus of this trust is not a countable resource, the Court finds that defendants' denial of Medicaid benefits for Hauenstein was in error and that Hauenstein, therefore, is entitled to judgment in her favor, requiring defendants to certify her for Medicaid eligibility.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART defendants' Motion for Summary Judgment [docket no. 34] as follows: (1) the Court GRANTS the motion for summary judgment as to plaintiff's claims against defendants the State of Oklahoma, the

Oklahoma Department of Human Services, the Oklahoma Health Care Authority, Howard H. Hendrick, in his individual capacity, and Mike Fogarty, in his individual capacity, and (2) the Court DENIES the motion for summary judgment as to plaintiff's claims against defendants Howard H. Hendrick, in his official capacity as the Director of Human Services, and Mike Fogarty, in his official capacity as the Director of the Oklahoma Health Care Authority. Additionally, the Court FINDS that plaintiff is entitled to judgment in her favor, requiring defendants to certify her for Medicaid eligibility.

**IT IS SO ORDERED this 19th day of May, 2011.**

*[Signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE